Case number 22-1233, Sierra Club petitioner versus Federal Energy Regulatory Commission. Mr. Matthews for the petitioner, Ms. Chu for the respondents, Mr. Joyce for the respondent intervenors. Good morning, Mr. Matthews. You may proceed when you're ready. Good morning, Your Honor. May it please the Court. Nathan Matthews on behalf of Petitioner Sierra Club. I'd like to reserve three minutes for rebuttal. We have two cases today that challenge FERC orders of approving extensions of the deadlines for construction of natural gas infrastructure projects. This case challenges the Northern Access Pipeline, a 99-mile pipeline that would connect Pennsylvania and New York. We have two issues on this case regarding FERC's good cause for an extension and FERC's handling of changed circumstances. On good cause, I'd first like to set the context for where these deadlines come from. FERC sets a deadline for the construction of infrastructure projects because FERC recognizes the findings underlying its public convenience and necessity determinations can grow stale with the passage of time, and FERC recognizes that there can be market disruptive effects from having approved strong reasons for including these deadlines in its orders, and the Natural Gas Act and FERC regulations do not provide a right to an extension. FERC provides that it may extend a deadline upon the showing of good cause, and that showing of good cause is appropriate to not extend a deadline unless there's a good reason why the developer has failed to meet its prior commitments. Here on the good cause inquiry, the developer, for years prior to the extension, failed to take action to renew permits that are essential to completion of the pipeline, typically the Clean Water Act Section 404 permit and the approval under the Endangered Species Act, and FERC has never made a finding of good cause for an extension and issued an extension in circumstances like this before. FERC has never held that where there's a permit that the applicant needs before the applicant can proceed, but that the applicant is neither making progress towards attainment of that permit, nor has explained why the applicant is not doing so, that the applicant has good cause for an extension. It seems to me that good cause is a potentially broad concept, and your position seems to want us to require a I take your position to be that National Fuel must show due diligence, and they did not do so in this case, but this diligence requirement does not seem to be consistent with other formulations of the good cause requirement. Even in the second case that you're arguing today, you acknowledge that the standard is good faith efforts to meet the deadline, but encountered circumstances that you get this diligence requirement, and then I want to explore why you think they weren't diligent in this case. So we get it from FERC. I mean, FERC's orders have said that what good faith efforts to complete the project means is diligent or active pursuit of the project, and our claim isn't quite... They've also said interested in pursuing the project. It's not in every case sort of homing in on diligence, is it? No, I agree that FERC has not consistently or clearly defined what the standard is. I also... Our claim here is not quite that the facts here conclusively established that they failed to meet the standard. It's that we have facts that the inaction on these permits at least indicates that they were not engaged in good faith pursuit of the project or acting diligently or whatever the standard was. There was evidence that calls good cause into question, and that nowhere in the record did FERC confront that evidence, even though Sierra Club in New York repeatedly called FERC's attention to it. So this is... The argument here is a failure to consider an important part of the problem claim rather than a claim that they reached facts that were... or a conclusion that was definitely wrong. So it seems that FERC considered the fact that there was litigation that cast into doubt whether this project could conclude, and so that takes us through, I think, August 20th of 2021, and then National Fuel asks for its extension five months later, in January. And it seems that in the overall scheme of things, they were litigating this issue, which was an important issue, and that shows that they were in good faith, interested in doing the project and in good faith pursuing it by litigating this issue. And then there's this five-month gap, and it... I take it... I take you to be saying that because they didn't pursue renewal of two of these many permits during this five-month gap, they did not show good cause for an extension? It seems very... I have a few answers to that question, Your Honor. One is that it's not just a five-month gap between when the deadline for petitioning for cert of the second circuit decision expired and they filed their application. You know, we also point to the time between when the application for an extension was filed and when FERC actually acted on that application. But they did do something there on their chart. There was... I don't believe that they do anything, but I... I think there was. I can't... There's a reference to something that happened up through a date that may have included September 20th or 21st, but that's not related to the permits we're talking about here. They also mentioned there... I draw a distinction between times when permits were issued based on outstanding applications and times when the applicant actually did something to advance those permits. But part of our argument is that after August 2021, there was no action on behalf of the applicants to pursue these permits that are the ones that the applicant themselves said are why they needed a longer extension than you might otherwise think. We didn't just pick these permits out of nowhere. These are the two that they said, even though it's only gonna take us 12 months to build the project and it's only gonna take us six months to buy the materials, we need an extra year on top of that to go ahead and renew these permits. And we said, well, why haven't you started that already? And that leads to the second part of this, which is that there is nothing in the record that asserts that they could not have renewed these permits while that other litigation was pending. And it's clear that they could have. But is that the standard? That they could not have done so means that they are not in good faith pursuing the project. How much time do you think should have gone by after August of 2021 before they had to start? I mean, our view is that they should have been acting in anticipation of being prepared to start construction, or at least being prepared to start buying the materials at that time. That they should not have waited until this time. And we're not setting up an impossible hurdle. If you look at their prior extension requests, the National Fuels 2018 extension request that led to the extension in January of 2019, or their premature 2020 extension request, at those times, National Fuel said, even though this Section 401 litigation is ongoing, we're still taking action to renew these 404 and ESA permits. They could show that they could do both at the same time. And that's what other pipeline developers do too, is that they work to clear everything at once because for these projects. But if I may, it seems to me that you're saying that if they, because they did not more promptly try to renew two out of many permits, is the finding that they acted in good faith to move this project forward? No. That requires FERC to address whether that inaction is consistent with the funding. But if it's not required, they can find good faith without addressing this specific issue, can they not? FERC has to ask why, I mean, whether there was some way in which the 401 litigation did justify the failure to pursue those permits. We do think they have to. We think the FERC has to address the issue. We don't know that the answer to that has to be based on facts, not on the record here, but if FERC conducted an inquiry that the failure to pursue these permits definitely doomed the good cause finding. But we do think that FERC had to address it and address whether or not these failures to act were consistent with the good cause. So I have the records right now. At JA 140, in April of 2022, they submitted a renewal request for the Yes, I don't believe, I thought you said JA 182? JA 140. That is not related to the two permits that we're concerned with here. That's not related, that is not part of the Clean Water Act section 404 permit. Yes, but it shows that they are moving forward with the project. That they didn't go forward with two permits doesn't mean that they weren't in good faith trying to bring this project forward. We believe that there's a question on that front that FERC needed to confront, that every other pipeline developer tries to clear all of the hurdles rather than doing it one at a time, and that's in fact what National Fuel did here with its initial approvals and its conduct up into 2020. And so if National Fuel knows that it's not going to be able to build without a 404 permit, it isn't bothering to get a 404 permit. We think that that shows a lack of seriousness in pursuing this project. Well let me ask you, Congress didn't set a standard time or even any guidelines and left it to the Commission. And I get your point about there's one way to look at these things and say you don't get any extension unless you've done absolutely everything. There's no give here. And even though you're spending money on litigation, even though you're spending money on planning, even though you're spending money on other construction related to the pipeline, there are important things that are not happening. And those things are significant to the extent that the project can't go forward unless these permits not only are obtained but that they remain current. So my question to you is precisely what must this court say regarding the standard that FERC has to apply? I mean we're obviously not going to say well if there are eight things you have to do, you've got to do at least six of them for the obvious reasons. But the sort of judgment call that you're asking for here as I understand it, and I may misunderstand it, is it's not enough even though we're in a where it's well aware of what's happening to the supply chain and other matters that are adversely affecting construction and employment and the ability to move projects forward. That's not good enough that we require that the supply A within six months and now it's been told by the supplier it's not going to get it for 12 months. Is that the type of standard? In other words the cases I've seen are where you know the developers keep a finger in the pie but the hand is not going to see that record this way and yet what you're arguing is supported by the record. The developer did not do certain things but why would we find that the Commission here has acted arbitrarily or it's failed even to recognize that there I can try to simplify that in a couple ways for you your honor. All right. First of all in this case there's nothing in the record no assertions that the pandemic or supply chain issues had anything to do with the delay here. That's it what? That there's nothing about the pandemic in this in case 22-1233 about the Northern Access Pipeline. I'd be happy to talk about the pandemic in the next. But the I don't believe the Commission is referencing the pandemic cases in the record here although I couldn't swear to that. I can ask answer some of the other questions about you know we are not saying that the court needs to make a judgment call of is pursuing six out of eight things enough or something like that. The order that we're asking for here is to say to the Commission you were confronted that the Commission was confronted with evidence indicating that the developer was not pursuing this project as vigorously as it had been before and as vigorously as other developers do and the Commission needed to say something about that to acknowledge that evidence in either say well that's what I'm getting at what what is the standard you say not doing as much as other developers well or other developers doing six out of eight things. I mean how do you put some specificity into this when good cause as Judge Pan emphasized is such a broad term and judgment calls depending on the project depending on the developer what reputation may or may not exist etc. So in the other cases that FERC cited here the developers were doing eight out of eight thing. There is no case that FERC cited where the developer was leaving something on the table and saying we'll get to that later in every that means it's sufficient but not necessarily necessary. Those are examples of people who did but FERC never said we must do this in every case in order to show good cause. But FERC needs to acknowledge that the facts here are prior cases and explain why that difference doesn't matter. And so given that this is something that FERC has never done before and that nowhere in the record did FERC say we are not bothered by the failure to renew this 404 permit. FERC just didn't acknowledge it at all. FERC didn't defend it's or provide a basis for this court to determine or for us to determine whether or how it actually thought about whether doing six out of eight things was enough. And these are not the two that were not done are the specific ones that the developer called to FERC's attention as being hey we haven't done these things and we need more time for them. Like we didn't pick some random T that wasn't crossed out of the record. We said if you're gonna need more time to do this you ought to explain why you haven't done it yet. And you're asking for a vacater. So you're saying because they didn't try to renew these two out of many permits during this five-month period they should go back to the drawing board and start over? We are asking for vacater that's the default remedy and neither of the respondents. You're not asking for it in the other case? No we're not in the other case. In this case none of the respondents disputed the vacater was the appropriate remedy. And in just last month this court affirmed in the Eagle County Colorado versus Surface Transportation Board case that where the government and the respond and intervenors don't dispute the vacater is the appropriate remedy the court will not depart from that default. So so we are asking for vacater we didn't understand it to be in dispute here. If the court disagrees you know that that is not the most important issue to us in this case. I see that I'm well over time. Let me just ask you counsel since you're familiar with these cases on the ground. What I'm not grasping in the argument is we send this back to the agency and the agencies yes we know that the developer wasn't doing this but we're not worried about that for the following four reasons. Your discussion with Judge Pan suggests that would be satisfactory to you. Well I don't know that the Commission would be able to come up with four reasons on remand is to justify this. So the way I think that it's not clear like if the Commission could come up with reasons and justify them even and explain why although their prior practice was to grant extensions when people were pursuing all options they were relaxing that standard or that that was sufficient but not necessary as you stated. That would be a more robust record for the Commission to try and stand on than what they have here but I'm not sure that the Commission will actually go there on remand. So I mean you say this never happened before well FERC didn't exist back you know in some of the earlier epidemic days. So now we have COVID come and it is different and all kinds of things are happening that are unprecedented. It's the concern here that the Commission just gave too light a hand to the good cause standards such that it's been melted down almost to well if you're still interested in the project and you've done a few things that's enough. You haven't abandoned the project. Is that where we are? In the our concern is that that was where we've ended up for the two cases that are before the court today. I don't believe that the Commission had been there previously. I also want to reiterate that there is nothing in the record for the northern access case arguing that the pandemic was in any way a problem for this pipeline. But yes I mean our concern is that it's we do not know exactly what the Commission interprets the good cause standard to be. That is a over an issue in the background of both of these cases. But but in both cases our concern is not so much with the standard but either the failure to confront evidence before that appears to lean against the Commission's position or the failure to present any evidence supporting the Commission's position. And so whatever the standard is these evidentiary and factual questions are things that the Commission needed to talk about and then in had the address this evidence then maybe we would have something to say about what the standard is whether it was met here. But but we don't even get there yet because the Commission is not confronting the evidence much less explaining why the evidence does or does not fall short of its standard. I just want to ask do either of my colleagues want to hear about the second issue in this case? About the Climate Act? I'm not going to ask any questions now Well I would like to ask I guess assuming it wasn't waived what is your best authority that the Commission has to consider these state statutes? I mean I can see where 50 different states might come up with legislation that someone would argue is going to affect FERC. So our authority is the Environmental Defense Fund versus FERC case which says that FERC needs to look at evidence about a diminishing or lack of growing demand. So New York isn't trying to regulate the pipeline New York is just regulating gas demand and projects that it's going to do so quite effectively with an 83 to 95 percent reduction in gas demand over the life of the pipeline. And so this is an Environmental Defense Fund. This isn't just serving New York. This pipeline. Go ahead. It is predicated in part on service to New York. Even FERC's brief says that the FERC found that a pipeline was in the public interest because it would deliver gas to local distributors in New York. And in City of Oberlin this court held that when you know one of the pillars supporting a FERC's decision is undermined this court will not just assume that the remaining pillars could bear the weight. Okay looking at the record JA 179 that's paragraph 32 of the permit it says the total incremental firm service 140,000 DTH per day 28 percent is delivered to the Tennessee system for markets in the northeastern U.S. so not specifically New York. And then the remaining 357,000 will be carried over the system for intended delivery into Canada. FERC also remarked that the remaining the 357,000 was not necessarily going to go to Canada and it has an option for delivery but it's intended for Canada so it just doesn't seem that the bulk of this gas is going to New York. No it's yeah the 140,000 is 27% of the gas which is I think similar to the percentage it was issued. That's not all going to New York either it's going to the northeastern U.S. So it would have been fine for FERC to say that the New York production in New York demand is not a concern because we are confident that there is enough demand in other states but FERC didn't say that. FERC did not say we are not relying on the New York demand because. So FERC said there are no other factors that will affect our decision that there's necessity and they said that this gas is fully subscribed for 15 years. They said that this gas is fully subscribed from a producer. They have someone who wants to sell the gas. The precedent agreement does not give any evidence that there's someone who wants to buy the gas. So if we have evidence that actually there isn't a important factor. Right. For FERC's practice as affirmed in Environmental Defense Fund versus FERC is that precedent agreements whether it's with a buyer or a seller is important evidence but it's not necessarily sufficient evidence. So and the precedent agreements typically are only one side of it. It's a producer in the pipeline or the pipeline and a buyer but it doesn't get you from a producer to a end-user. But why isn't enough to say that we don't think there are new factors that affect our decision-making and this is fully subscribed? Because Environmental Defense Fund versus FERC said that it is arbitrary for FERC to rely exclusively on precedent agreements and it's finding a public interest when the precedent agreement is with it. But aren't you too late to raise that because you should have raised that when they issued the certificate. No because when they issued the certificate we didn't have evidence that there was a decline in No but that's a different issue. You're saying they can't rely on the precedent agreement. They relied on the precedent agreement to issue the certificate and you can't collaterally attack that now. Well so our claim is that we can but it's not a collateral attack because we are not arguing that the certificate was invalid when issued and we aren't arguing that that there wasn't a need for the pipeline when it was issued. But in 2019 when New York decided to reshape its gas markets that's a new factor that shows that there is no longer demand. But they relied on these precedent agreements in 2017 to say there's enough demand and that has not changed and you can't attack that now. Our claim on the good on the change circumstances issue is that FERC cannot extend the deadline without amending the certificate. FERC has to use its 15 USC 7170 authority if it wants to extend the deadline. That would be only if this new factor affected the grounds that relied upon in the initial certificate. Every petition to extend is not a reopening of the entire certificate process is it? We don't think the court needs to decide that issue but we do think that the court needs to address that in the specific case of extending a deadline. Right you're saying every time somebody moves to extend a deadline they have to re-examine all of the assumptions in the So the reason we think that is because FERC has said that the reason it put a deadline there in the first place was to guard against changed circumstances. And so if FERC can only... So the Algonquin gas standard is that if a certificate holder files an extension of time within a time frame during which the environmental and other public interest findings underlying the Commission's authorization can be expected to remain valid the Commission generally will grant an extension of time if the movement demonstrates good cause. So they just have to demonstrate good cause unless you can show that there actually has been something that makes the original authorization not valid. Right? I respectfully disagree that if the purpose for setting the deadline is to protect against changed circumstances and FERC can only amend that deadline based on a consideration of the appropriate or whether it's In deciding whether it's appropriate to remove a protection you have to ask whether the thing you were protecting against has occurred. We're fine with FERC like presuming that the initial conditions would still be valid but that has to be a rebuttable presumption and so here where we have this drastic change in the New York energy landscape in the form of the Climate Act, FERC has to at least consider the Climate Act as whether it remains valid. And FERC in the companion case the the Chenier-Corpus Christi stage 3 case. I just want to say that that FERC did talk about the Climate Act. FERC talked about the greenhouse gas regulation part of the Climate Act. FERC did not talk about the market and need parts of the Climate Act record. Under the paragraph about NEPA I think it did. I don't believe so your honor. In paragraph 18 discussing NEPA it says there has not been a showing of significant new circumstances or information germane to environmental concerns the proposed action or its impacts. I guess it didn't specifically talk about the Climate Act. No and this court has said that asserting that a factor is considered is not the same thing as actually considering it. That as far as I can tell Helen in the extension order FERC hasn't even demonstrated that it was aware of our argument in New York's arguments about decreasing gas demand in New York undercutting need for the pipeline. Even if even if it were true that there's a Climate Act and it's going to the vast majority of the gas isn't going to New York that wouldn't affect their findings. FERC says in its brief that it approved this pipeline in part because it would deliver gas to New York gas distributors. So you know the Environmental Defense Fund versus FERC standard doesn't say that FERC couldn't. Well distributors but it has the end market has to be New York for the Climate Act to be part of this. Yeah I think this is a term of art that the distributors here I understand to refer to actually like municipal groups or folks who are going to distribute it folks using it in New York although you can ask for clarification on that. So this is similar to the good cause argument you know we are not arguing that it would have been impossible for FERC to build a record with any set of facts that shows that the this pipeline remains in the public convenience and that's Environmental Defense Fund versus FERC says that FERC has to confront that. You know maybe FERC says we've considered this evidence but because enough of this gas is going to be going to other states that we're we're comfortable with saying that this pipeline remains in the public interest and that the precedent agreements outweigh that other evidence but that that has to be a explicit discussion that simply did not happen here. Anything else for my colleagues? Not for me no. Thank you. Thank you we'll give you two minutes. Good morning your honor. Apologize let me just adjust these microphones. Take your time. Good morning may it please the court. Susanna Chu for FERC. Let me start with the good cause standard. Your honors are correct. The Congress did not set a standard for good cause here. The Commission takes a case-by-case approach to each of these extension requests. And here looking at the grand scheme of things as you pointed out Judge Pan. Excuse me counsel I'm going to ask you to speak more loudly. I apologize. Sorry. Is this better? A little. Try really loud. I don't know what's happened but the microphones just aren't that strong this morning. Got it. Okay. Yeah that's better. Thank you. Okay the Commission takes a case-by-case approach to each of these extension requests and as Judge Pan was observing in the grand scheme of things national fuel had been tied up in litigation for four years at least with Sierra Club and with New York State over a Clean Water Act permit that was existential for the pipeline. If that permit you know if the Commission's waiver finding had been overturned by the Second Circuit that would have been the end of the pipeline. Now the Commission found in its extension order at paragraph 15 that the national fuels litigation efforts demonstrated its efforts to pursue this project. And the no Commission order requiring project sponsors to go out on a limb and keep every single permit up-to-date and refreshed for the duration of any litigation delay that it might encounter. And in fact in one of the cases that has been cited in these briefs Constitution Pipeline the Commission found that project sponsors litigation of New York State's denial of a water quality certification showed that the project sponsor was quote diligently pursuing completion of the project. That's Constitution Pipeline 169 FERC 61102 at paragraphs 21 to 22. The Commission has also clarified in the Constitution Pipeline case that how the project sponsor goes about satisfying the project sponsor. There is a degree of business judgment involved here. These permits are interconnected and the Commission leaves that to the project sponsors to decide how best to to satisfy the conditions needed to get the notice to proceed from the Commission to actually commence construction. So this is a flexible standard. The Commission is looking at these requests case-by-case and it's making a determination based on the good-faith efforts. It's not grading the relative diligence of the project sponsors. It doesn't grant extensions just to those project sponsors to get an A plus as the requirements for a good cause extension. When you make a determination as to whether an extension is appropriate does that extend to the length of the extension because here you granted a very lengthy extension and Sierra Club says that you granted a three-year extension of a two-year deadline and the construction takes 12 months. Yes so just to clarify your honor there had been a first extension here. So initially when the certificate order issued in 2017 the Commission had attached a two-year deadline saying that it expected construction would take approximately two years. However after that once National Fuel became embroiled in the litigation over the water quality certification the Commission actually had already granted a three-year extension. But this new extension was an additional 35 months. That's correct and that's because. So why is that when the initial deadline was only two years and it only takes 12 months to construct. Right so the Commission had before it the extension request from National Fuel which said that several things had to happen. One of them was that permits had to be refreshed and that might take approximately six to twelve months and then it cited the need to obtain long lead time materials and estimated that might take approximately one year. And of during the pandemic when I think we might all know that it was incredibly difficult for builders and you know to obtain normal contracting supplies not to mention you know large diameter pipeline. And the third thing was that the construction itself was estimated to take a year. And we should consider also that you know as part of this process once all the permits are refreshed National Fuel would actually have to return to the Commission and show that has met all the environmental conditions of the certificate order and that it has obtained all of the permits and therefore it should get a notice to proceed. But that's that's a process you know that is additional time. So that's why here the Commission granted a three-year extension. I can address the Climate Act if your honors would like. So Judge Pan you were correct. The Commission's certificate order made no finding of market need based on end-use within New York State. That's that certificate order paragraph 32. And the Commission actually cited that paragraph in the extension order at paragraph 18 note 48 JA 9. That's where the Commission finds no reason to revisit the certificate orders need findings. And it cited the certificate order at paragraphs 31 and 32 which are at JA 179. And I think I don't need to that but as you have observed that the pipeline is designed to serve producers who wanted to move natural gas into Canada with the option for delivery to New York State. So there is there's no basis to say that there was a finding of market need based on end-use in New York. I also want to point out that the Environmental Defense Fund case relating to the Spire pipeline is completely irrelevant to this case. That case arose during the certificate stage when the Commission was making an initial market need determination. And the court in that case did find that the Commission had failed to address certain evidence that undermined the reliability of those precedent agreements. And that's not the case here. Here we're in a totally different proceeding, an the certificate order has been closed and there's no allegation anywhere in the record about record evidence of self-dealing or otherwise that would undermine the affiliate precedent agreements that underpin the Commission's market need finding here. So here the Commission found that there were no new factors that would require it to go back and reassess its market need findings or the certificate order. The project remained fully subscribed. The pipeline had acted to pursue the project by actively litigating the Second Circuit water quality certification in addition to other cases that Council for National Fuel might point out. So I think in this case the Commission was amply within its discretion in extending this deadline. Any questions from my colleagues? None for me. No, thank you. All right, thank you very much. Thank you. Judge Rogers, can I start with you off the bat and make sure I've got the mics in the right place? Great. Can you hear me? Thank you. Thank you. May it please the Court, Eamon Joyce on behalf of the National Fuel Intervenors. I don't have much to add to what FERC had to say but I'll touch on the WQC briefly and then touch on the Climate Act a little bit. Look, from the sponsor's perspective, the WQC is, as FERC said, fatal. If you don't have it, the project's dead. And so to plow forward on other fronts is a very dangerous game and FERC rightly recognized the economic problems of, potential economic problems of doing that. Judge Pan, I think you correctly pointed out that nonetheless National Fuel made efforts to drive the project forward. Those are listed on 138 through 140. I think if you're keeping score at home, what you'd find is we obtained seven of the ten federal permits listed there and four of the six state permits. So did you do anything to make that happen though? Because it wasn't clear from that chart what you had done or whether these things just were based on work that had been done previously. So it's a combination, right? We submitted new speedies permits. Those are listed to New York State and there's a long history of back-and-forth on speedies that extended into September of 2021. Judge Pan, you pointed out that there are the hydrostatic permits that extended into April of 22, new submissions there. We point out in our brief, I recognize it's outside the record at the time of the extension, but we've worked on wetlands in 2022. In 2023, we've acquired property via eminent domain. This is not an abandoned project. This is a project that National Fuel is very much trying to move forward on. To Sierra Club's response that in reply and stated here that other pipelines have done more. I think I have two top-level responses to that. One, that argument only makes sense if you understand what Sierra Club's ultimate goal here, which is to stop pipeline infrastructure. The two projects they point to, Constitution and Penn East, are projects where sponsors plowed forward and canceled the projects. In each of those projects, they wrote off pre-tax over $300 million because the projects couldn't get completed. The second thing I'll say is to do that, whatever the business judgment, runs headlong into problems that this court has has repeatedly found of pipeline companies. I think these came to a head before this court in En Banc Allegheny defense, where this court worried about the real-world implications of continuing to go forward on a project where litigation hasn't been resolved. National Fuel took a business responsible approach to this project and an overall responsible approach to this project that avoided the kind of litigation that this court's been faced with. The last thing I'll say, I see I'm out of time, but if I may, just on the Climate Act, whether you do this in terms of waiver or in terms of an issue presented, my friend on the other side says, well, the the EDF issue didn't arise until after the extension. That just doesn't make sense in terms of what ended up happening then. The only, the only statement about demand as to this not Sierra Club, and that's at pages 53 and 54 of their, excuse me, of their FERC's submission, which just said the need for the project should be assessed in light of the Climate Act. There's nothing about the producer. There's nothing EDF related there. Sierra Club filed an opposition to our extension request. The only thing they said about the Climate Act is on J67. It's not a demand argument. It's a greenhouse gases argument. Then Sierra Club comes back at JA 154 on rehearing, makes for the first time a demand argument, and it's a mealy-mouthed one. Not directed at the producer, not an EDF argument, making this case squarely controlled by Oberlin. All they say is Climate Act likely undercuts or reduces demand, not squaring up to the producer or any of those issues at all. Unless there are further questions, your honors. Thank you. We'll give you two minutes. Thank you, your honors. A couple points. On the good-faith standard or good cause, the FERC's language is good-faith efforts to meet the deadline, not good-faith efforts to move the project forward and construct eventually, and so that does you need to try and get to that deadline rather than just to say, you know, we're gonna do this one piece at a time. I'm sorry, so you interpret the good-faith standard to require national fuel to move full speed ahead despite the litigation in the Second Circuit? Not exactly. We agree that it was prudent to not start construction while the litigation was going on in the Second Circuit, but we argue that they should have been prepared to be ready to be able to start construction once that litigation was resolved. You're saying they had to do that or else they weren't acting in good faith? That's the argument we made during the proceedings before FERC, and that's the argument that we think FERC failed to address here, where FERC did not address their failure to keep other permits current so that they would have been ready to proceed once the Second Circuit litigation was resolved. FERC articulates the standard as good-faith efforts to meet the deadline. We don't need to argue that they should have been bringing out the cutting trees and doing bulldozers while the litigation was going on, but they should have been ready to start construction. The other point I'd like to make is that in its brief, FERC admitted that some of this gas is going to New York, and FERC did not take the position in the record here that the pipeline was in the public interest because all of the gas could go someplace else. Page 43 of FERC's brief, they argue that gas would not go to New York alone. They argue that it would not necessarily undermine the finding of the public interest if some of the gas demand in New York was decreased, but they find that it wouldn't necessarily undermine it. It doesn't say we considered the issue and found that it doesn't. And on page 42 of the brief, they say that the pipeline will be transporting gas to markets in Northeastern United States, as well as local gas distribution companies, power generators in New York and elsewhere. So even in the briefs, FERC's argument was not that New York doesn't matter for this pipeline. They said New York is just part of the puzzle. And then lastly, this apparent argument on waiver. We responded in the briefs to the arguments about whether our rehearing request was adequate. Council for Interveners just argued that I understood them to possibly be arguing we waived issues but not raising them at the protest stage. Issues about the Climate Act impacts on gas demand, as Interveners acknowledged, were raised by New York, which in its comments said the Gas Act undercuts gas demand in New York. New York pointed out that the Climate Act was going to lead to a mandatory 83 to 95 percent production in gas use in New York. And although the Natural Gas Act imposes an exhaustion requirement where we have to only rely on issues on our own rehearing request, before the rehearing stage there's no requirement for specificity that we have to have been the one to raise the issue before FERC. As long as FERC was made aware of the issue, that's enough. I see that I'm again over time, but if there are any questions.
judges: Henderson, Pan, Rogers